IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02371-KLM

PETER TERRENCE MONTOYA,

 Plaintiff,

v.

D.J. LATINO, in his individual capacity;
KATHY DENIRO,
PHYLLIS SANCHEZ, and
PATTY MILNER, in their individual capacities and official capacities as members of the Pueblo City School District No. 60 Board; and,
PUEBLO CITY SCHOOL DISTRICT NO. 60,

 Defendants.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's First, Second, and Seventh Claims** [#14][1] (the "Motion"). Plaintiff filed a Response [#20] in opposition to the Motion, and Defendants filed a Reply [#24]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. Based on the following, the Motion [#14] is **GRANTED**.[2]

---

[1] "[#14]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. See [#27].

**I. Background**

Plaintiff Peter Terrence Montoya ("Plaintiff"), brings this suit against Defendants D.J. Latino ("Latino"), in his individual capacity, Kathy DeNiro ("DeNiro"), Phyllis Sanchez ("Sanchez") and Patty Milner ("Milner"), in their individual and their official capacities as members of the Pueblo City School District No. 60 Board (the "Board"), and Defendant the Pueblo City School District No. 60 (the "District") (collectively, "Defendants"). *Compl.* [#1] at 1. Plaintiff raises claims pursuant to 42 U.S.C. § 1983 and Colorado state law. *Compl.* [#1] ¶ 6.

Plaintiff alleges the following facts as the basis for his claims.[3] Plaintiff was employed as a teacher at East High School ("Pueblo East") in Pueblo, Colorado, from August 2007 through June 2016. *Id.* ¶ 1. In 2007 and 2008, Plaintiff was on the Pueblo East baseball coaching staff. *Id.* ¶ 1. Plaintiff served as assistant baseball coach and JV head coach. *Id.* ¶ 18. Plaintiff worked under the head baseball coach at Pueblo East, Defendant Latino. *Id.* During that time, some parents of Pueblo East students expressed dissatisfaction with Defendant Latino as head coach and that they desired Plaintiff to become head coach. *Id.* Defendant Latino then made defamatory statements about Plaintiff to administrators at Pueblo East, including accusations that Plaintiff committed crimes and engaged in unethical behavior. *Id.* ¶ 2. Defendant Latino also requested that Plaintiff be banned from coaching baseball at Pueblo East. *Id.*

During a certain period of Plaintiff's employment as a teacher at Pueblo East, an agreement between the District and the Pueblo Education Association Inc. (the

---

[3] All well-pled facts from the complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

"Agreement") was in effect. *Id.* ¶ 47. The Agreement, effective September 1, 2014, through August 31, 2016, includes sections providing guidance on "Teacher Rights" as well as "Athletic Coaching Vacancies." *Id.* ¶¶ 47-48. The Teacher's Rights section provides that: (1) "A teacher shall not be disciplined, reduced in compensation, transferred, adversely evaluated, or otherwise inequitably treated with regard to this agreement without just cause;" (2) "A teacher shall be given prior notice and afforded the opportunity of having representation when she is to receive any formal written discipline by the Board . . ." and (3) "Once Administration has determined that an investigation shall take place as the result of a complaint . . . the teacher shall be notified promptly . . ." *Id.*

On June 15, 2015, Defendant Latino resigned from the position of head baseball coach. *Id.* ¶ 3. In his letter of resignation, which Defendant Latino forwarded by email to Defendant DeNiro, Defendant Latino made additional defamatory statements about Plaintiff and reiterated his desire that Plaintiff be banned from coaching baseball at Pueblo East. *Id.* Defendant DeNiro then forwarded Defendant Latino's resignation letter to Defendants Sanchez and Milner. *Id.*

After the position for head baseball coach was posted, Plaintiff applied and interviewed for the position. *Id.* ¶ 4. He thereafter received the Selection Committee's recommendation and the endorsement of the Pueblo East Superintendent. *Id.* Based on Plaintiff's allegations, it appears that the hiring process involved placing applicants' names on the Board meeting agenda in order for the Board to vote on the applicants' appointments.[4] *Id.* ¶¶ 27-32. Plaintiff's name, however, was not placed on the Board's

---

[4] Plaintiff refers to the Board's agenda as both the "agenda" and the "consent agenda." *Compl.* [#1] ¶¶ 27-32.

agenda for the July 2015 Board meeting, was removed from the August 2015 agenda, and the Board voted to remove Plaintiff's name from the agenda in the September 2015 Board meeting. *Id.* ¶¶ 27-32. The Board nonetheless held a vote in the September 2015 Board meeting regarding Plaintiff's appointment. *Id.* ¶ 33. Two Board members voted in favor of Plaintiff's appointment as head baseball coach, and three Board members, Defendants DeNiro, Sanchez, and Milner, voted against Plainitff's appointment. *Id.* Based on Plaintiff's allegations, the Board members' decision to deny Plaintiff the position was based on a "personnel issue." *Id.* Plaintiff did not receive notice regarding the nature of the personnel issue and did not receive a hearing to address it. *Id.*

Plaintiff requested and received copies of his building, personnel, and athletic files, and none showed any negative personnel issues or adverse actions against Plaintiff. *Id.* ¶ 35. In October 2015, Plaintiff made a request for records under the Colorado Open Records Act ("CORA") and discovered Defendant Latino's resignation letter that included the defamatory statements about Plaintiff. *Id.* ¶ 5.

In Claims One and Two, Plaintiff alleges that Defendants DeNiro, Sanchez, and Milner conspired to deprive him of his procedural due process rights and that he was actually deprived of procedural due process. *Id.* ¶¶ 71-73, 79-82. In Claim Seven, Plaintiff also alleges that the District violated Colorado's Open Meetings Law because Defendants DeNiro, Sanchez, and Milner communicated by email, a forum not open to the public, regarding their decisions about hiring Plaintiff as head baseball coach. *Id.* ¶¶ 115-123. Additionally, Plaintiff brings several state law claims, the substance of which are not at issue currently, solely against Defendant Latino.

The Motion [#14] seeks partial dismissal of Plaintiff's Complaint [#1] pursuant to Fed.

R. Civ. P 12(b)(6). Defendants move to dismiss Plaintiff's first, second, and seventh claims, which arise under 42 U.S.C. § 1983 and C.R.S. § 24-6-402(2)(b). *Compl.* [#1] at 14-15, 20. Defendants contend that dismissal of these claims is appropriate for the following reasons: (1) Plaintiff does not have a property right in the position of Pueblo East's baseball coach; (2) Defendants named in their individual capacities are entitled to qualified immunity; and (3) Plaintiff does not allege sufficient facts to support a claim that the Board violated the Colorado Open Meetings Law. *Motion* [#14] at 4-7. Because of the Court's conclusions regarding Plaintiff's lack of a protected property interest in the head coaching position, the Court does not address Defendants' qualified immunity argument.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts,

taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

**A. Plaintiff's First and Second Claims Regarding Denial of Procedural Due Process**

Plaintiff alleges that Defendants DeNiro, Sanchez, and Milner, acting under color of state law, deprived Plaintiff of his procedural due process rights under the Fourteenth Amendment by: (1) blackballing him from coaching, thereby disciplining him, (2) effectively reducing his salary, (3) adversely evaluating him, and (4) treating him inequitably without just cause, notice, or a right to a hearing on any charges. *Compl.* [#1] ¶¶ 71-75.

Defendants argue that Plaintiff's First and Second Claims for procedural due process should be dismissed because Plaintiff does not have a protected property interest in the position of head baseball coach. *Motion* [#14] at 4-5.

The Fourteenth Amendment prohibits depriving any person of "life, liberty, or property without due process of law." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). To prevail on a deprivation of procedural due process claim, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." *Id.*; *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972) ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of the interests that a person has already acquired in specific benefits."). Thus, in order to assess the sufficiency of Plaintiff's First and Second Claims for deprivation of procedural due process, the Court first addresses whether Plaintiff has sufficiently alleged a property interest.

Protected property interests extend beyond "actual ownership of real estate, chattels, or money," but "the range of interests . . . is not infinite." *Board of Regents*, 408 U.S. at 570-72. In order to be a protected interest, a benefit "must be more than a unilateral expectation" or "an abstract desire." *Id.* at 577. A person must have "a legitimate claim of entitlement to it." *Id.* The underlying interest is created generally by state law, but federal law determines whether that interest is protected by the Fourteenth Amendment. *Teigen*, 511 F.3d at 1079.

**1. Claim One**

In order to have a property interest "in a benefit for purposes of due process protection . . . [t]he plaintiff must demonstrate an 'entitlement to a substantive right or

benefit' supported by 'rules or mutually explicit understandings . . . .'" *Teigen*, 511 F.3d at 1079 (quoting *Robbins v. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006)). A "mutually explicit understanding" may be created by "settled hiring practices" but "[a] hiring process that allows for discretion and subjectivity cannot create a mutually explicit understanding." *Id.*; *Jones*, 2007 WL 4269052, at *2.

Plaintiff alleges that he had a protected property interest in the position of head baseball coach at Pueblo East based on "a mutually explicit understanding" created by the Pueblo East hiring process.[5] *Response* [#20] at 13. Based on Plaintiff's allegations, the Pueblo East hiring procedures require the Board's approval of hiring appointments. *Compl.* [#1] ¶ 28; *Response* [#20] at 18. However, he alleges that there is a "customary practice" of "unanimously block vot[ing] the[ ] remaining appointments without any discussion and confirm[ing] the recommendations of the Selection Committee and the Superintendent." *Id.* Plaintiff alleges that the Board's "customary practice" of approving appointments based on recommendations gives rise to a "mutually explicit understanding" because it suggests that the Board's discretion in the hiring process is illusory. *Id.* at 19. He adds that the Board "rarely, if ever, rejects personnel recommendations." *Id.* at 17. Thus, Plaintiff contends that the fact that the Selection Committee and the Superintendent recommended him for the baseball coach position entitled Plaintiff to "a property interest in remaining on the consent agenda and being appointed Pueblo East head baseball coach." *Id.* at 19.

---

[5] It is unclear whether Plaintiff is arguing that his appointment to the head baseball coach position would have constituted a promotion, due to the fact that the majority of cases that he cites are about promotions. *See Response* [#20] at 15-17. However, Plaintiff served as assistant baseball coach in 2007 and 2008 and was no longer employed as such at the time of his application for the head baseball coach position in 2015. *Compl.* [#1] at 4. Thus, the Court presumes that becoming the head baseball coach would have constituted a new position for him.

The Court finds that Plaintiff has not sufficiently alleged a property interest in the position of head baseball coach. Based on Plaintiff's allegations, he went through the steps of the hiring process in applying, interviewing, and receiving the recommendations of the Selection Committee and the Superintendent; however, the Board ultimately retained the right to review hiring decisions. *See Compl.* [#1] ¶¶ 24, 26-28; *see also Jantz v. Muci*, 976 F.2d 623, (10th Cir. 1992) (holding that, although plaintiff contended that hiring authority was delegated to the principal "by custom or usage," hiring authority was not completely delegated to the principal because the Board retained the right to review hiring decisions). "If the board retains the right to review, even though it may not exercise such review or investigate the basis of the decision, delegation of final authority does not occur." *Id.* at 631. Plaintiff's argument that the Board's discretion in hiring was illusory is unavailing. Even if it is "rare" that the Board disagrees with recommendations, the hiring procedures as alleged did not *require* that Plaintiff receive the position of head baseball coach based solely on the recommendation. *See Martin Marietta Materials Inc. v. Kansas Dept. of Transp.*, 810 F.3d 1161, 1179 (10th Cir. 2016) ("A property interest exists if discretion is limited by the procedures in question, that is, where the procedures, if followed, require a particular outcome.") (emphasis in original; internal quotation marks omitted). Further, the very language that the Selection Committee and Superintendent made "recommendations" or "endorsements" regarding Plaintiff indicates that the Board had discretion to vote and make the final hiring decision. *See Response* [#20] at 17. Similarly, Plaintiff's allegation that it is "rare" for the Board to reject personnel recommendations, such as those made by the Superintendent, indicates that there are indeed instances where the Board uses its discretion to reject recommendations. *See Id.* Because the Board retains such discretion,

Plaintiff fails to allege that a mutually explicit understanding gave rise to a protected property interest. *See Jones*, 2007 WL 4269052, at *2.

Lastly, Plaintiff relies on the Agreement between the District and the Pueblo Education Association to argue that he had a protected property interest in the baseball coach position. *Response* [#20] at 22. Plaintiff argues that the Agreement contains certain rights that he had as a teacher and describes the procedure for posting athletic coaching vacancies, and that the Board's actions violated these provisions. *Id.* at 22-24. Plaintiff alleges that: (1) removing his name from the consent agenda constituted a disciplinary action; (2) his compensation was effectively reduced; (3) he was adversely evaluated; and (4) he was otherwise inequitably treated without cause and without notice or a right to be heard concerning the personnel issue. *Id.* at 23. Further, Plaintiff argues that, pursuant to the posting procedures for athletic coaching vacancies, he had a "right to apply for the vacancy . . . and had the right to be considered . . . ." *Id.* at 24.

Defendant does not dispute that Plaintiff likely had an interest in his position as a teacher at the school, but argues that this possible interest in one position does not create an interest in the additional, unrelated position of head baseball coach. *Reply* [#24] at 3. The Court agrees. The relevant language of the Agreement refers to a "teacher's" rights, but makes no reference to coaches. In addition, the language of the Agreement explicitly identifies "teachers" and "athletic coaching" separately. Moreover, Plaintiff asserts no other basis for the source of his interest in the coaching position aside from the Agreement. Accordingly, Plaintiff has not sufficiently alleged that he was entitled to the position of head baseball coach. Thus, the Board's actions in removing Plaintiff's name from the consent agenda and declining to appoint him to this additional position did not constitute a

disciplinary action under the Agreement or otherwise interfere with his rights as a teacher. *See Teigen*, 511 F.3d at 1080-81 ("it is well established that an entitlement to nothing but procedure cannot be the basis for a property interest . . . because the process is not an end in itself.") (internal quotation marks omitted). Therefore, Plaintiff's arguments fail regarding whether the Board's actions deprived him of property under the Agreement.

Accordingly, the Motion [#14] is **granted** as to Plaintiff's First Claim against Defendants DeNiro, Sanchez, and Milner. The claim is **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### 2. Claim Two

Plaintiff's Second Claim alleges that Defendants Latino, DeNiro, Sanchez, and Milner conspired under 42 U.S.C. § 1983 to deprive Plaintiff of his procedural due process rights. *Compl.* [#1] at 14. Defendants argue that Plaintiff's Second Claim should be dismissed for the same reason as his First Claim, i.e., that Plaintiff lacks a property interest in the position of head baseball coach. *Motion* [#14] at 6.

"[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir. 1990). Here, to prevail on his Second Claim, Plaintiff must show that he was deprived of a protected property interest. *Id.* ("[T]he essence of a § 1983 claim is the deprivation of the right rather than the conspiracy."). As Defendants argue and as explained in detail

above, Plaintiff had no Fourteenth Amendment property interest in the position of head baseball coach. *See Motion* [14] at 6. Without sufficiently pleading a property interest, Plaintiff's argument that he was actually deprived of a right fails, and he is thus unable to state a conspiracy claim under § 1983.

Accordingly, the Court concludes that Plaintiff has not adequately stated a § 1983 conspiracy claim. The Motion [#14] is **granted** as to Plaintiff's Second Claim against Defendants Latino, DeNiro, Sanchez, and Milner, and the claim is **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219.

**B.     Remaining State Law Claims**

The Court notes that all of Plaintiff's remaining claims (Claims Three, Four, Five, Six and Seven) allege violations of state law. *Compl.* [#1] at 15-19. Here, subject matter jurisdiction is based on federal question jurisdiction.[6] *See Compl.* [#1] at 3. As a result, consideration of the remaining claims would require that the Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The exercise of supplemental jurisdiction "is within a district court's discretion." *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." *See Lancaster v. Indep. Sch. Dist. No. 5,* 149 F.3d 1228, 1236 (10th Cir. 1998) (stating that once "the bases for federal subject matter jurisdiction have been extinguished . . . the district court may decline to exercise continuing pendant or supplemental jurisdiction over plaintiff's state claims"). Thus, having dismissed Plaintiff's

---

[6] Plaintiff does not assert that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims for violation of state law and such claims (Claims Three, Four, Five, Six, and Seven) are **dismissed without prejudice**. *See Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (holding that where federal claims are dismissed before trial, federal courts should decline to exercise supplemental jurisdiction over state law claims by dismissing them without prejudice).

### IV. Conclusion

IT IS HEREBY **ORDERED** that the Motion [#14] is **GRANTED**. Plaintiff's First and Second claims are **DISMISSED with prejudice**, and Plaintiff's Third, Fourth, Fifth, Sixth, and Seventh claims are **DISMISSED without prejudice.**

IT IS FURTHER **ORDERED** that the Clerk of the Court shall close this case.

IT IS FURTHER **ORDERED** that the following are **VACATED**:

- Final Pretrial/Trial Preparation Conference set for March 16, 2018,
- In Court Hearing set for March 16, 2018,
- Jury Trial set for March 19-23, 2018, and
- All remaining deadlines.

Dated: September 19, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge